UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW SCHILLACE,

    Plaintiff,

v.                                                      Case No. 8:24-cv-2117-CPT

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Disability Insurance Benefits (DIB). (Doc. 18). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in May 1976, obtained at least a high school education, and has past relevant work experience as a "management analyst, operations officer." (R. 30, 293, 296, 307). In April 2023, the Plaintiff applied for DIB, alleging disability as of February 2020 due to anxiety, arthritis, polytrauma, radiculopathy,[1] depression sleep apnea, post-traumatic stress disorder, chronic traumatic encephalopathy, a

---

[1] The Plaintiff appears to have misspelled this condition in his application. (R. 306).

traumatic brain injury, a partially torn labrum, and degenerative discs in his back and neck. *Id.* at 22, 249–50, 306. The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. *Id.* at 181–90, 192–99.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in March 2024. *Id.* at 37–66, 200–01. The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. *Id.* at 37–66. A vocational expert (VE) also testified. *Id.*

In a decision issued in May 2024, the ALJ determined that the Plaintiff (1) had not engaged in substantial gainful activity between his alleged onset date in February 2020 and his date last insured in September 2022; (2) had the severe impairments through his date last insured of primary headache disorder, attention deficit hyperactivity disorder, degenerative joint disease of the right shoulder, adjustment disorder with mixed anxiety and depressed mood, and degenerative disc disease of the cervical and lumbar spine; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to various limitations;[3] and (5) based on the VE's testimony, could engage in jobs that exist in

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA deems considerable enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. § 404.1520(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] These limitations were that the Plaintiff could lift up to twenty pounds occasionally and could lift or carry up to ten pounds frequently; could stand, sit, and walk for six hours in an eight-hour work day; could frequently stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds; could frequently

significant numbers in the national economy. *Id.* at 22–32. In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.*

The Appeals Council denied the Plaintiff's request for review. *Id.* at 13–18. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette v. Comm'r of Soc. Sec.*, 13 F. 4th 1309, 1313 (11th Cir. 2021) (citation omitted).

II.

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[4] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To ascertain whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[5] Under this process, an ALJ must assess whether the claimant: (1) is

---

handle and finger bilaterally; could occasionally interact with co-workers and the public; and could tolerate routine workplace changes. (R. 27).

[4] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[5] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)). Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner. *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to determining whether the Commissioner applied the correct legal standards and whether the decision is buttressed by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted).  In resolving whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F. 4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)).  Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F. 4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

III.

The Plaintiff's sole claim on appeal is that the ALJ erred by not incorporating any restrictions in his RFC determination to account for the Plaintiff's primary headache disorder. (Doc. 18).  After careful review, the Court finds that the Plaintiff's challenge lacks merit.

As referenced above, an ALJ must assess at step two whether a claimant has a medically determinable impairment or combination of impairments that is severe. *McCormick v. Soc. Sec. Admin., Comm'r*, 619 F. App'x 855, 857 (11th Cir. 2015) (per curiam) (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *see also* 20 C.F.R. § 404.1520(a)(4)(ii). The severity of an impairment in this context is "measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of [a] deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). An impairment is therefore deemed to be severe only if it significantly limits a claimant's physical or mental capacity to

engage in basic work activities. *See* 20 C.F.R. § 404.1522(a); *Bridges v. Bowen*, 815 F.2d 622, 625–26 (11th Cir. 1987) (per curiam). A non-severe impairment, on the other hand, is one that does not result in such a restriction. *See* 20 C.F.R. § 404.1522(a). In the end, the bar for showing a severe impairment is a low one, *McCormick*, 619 F. App'x at 857 (citation omitted), and the finding of any severe impairment is enough to satisfy the step two inquiry, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891 (11th Cir. 2013) (per curiam) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

As also noted earlier, the ALJ's task at step four is to determine a claimant's RFC and his ability to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To do so, an ALJ must discern based on all the pertinent evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by the claimant's medically determinable impairments—severe and non-severe—and related symptoms. *Id.* § 404.1545(a)(2) ("[The SSA] will consider all of [a claimant's] medically determinable impairments of which [it is] aware, including [a claimant's] medically determinable impairments that are not 'severe,' . . . when [the SSA] assess[es a claimant's RFC]."); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (same) (citation omitted).

An ALJ, however, is not required to expressly discuss every piece of evidence in his decision. *See Stowe v. Soc. Sec. Admin., Comm'r*, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir.

6

2005) (per curiam)). Instead, the ALJ need only ground his RFC determination on the claimant's condition "taken as a whole," *Jamison*, 814 F.2d at 588 (citations omitted), after evaluating all the material information presented, 20 C.F.R. §§ 404.1520(e), 404.1545(a). As long as the Court can ascertain from the ALJ's decision that he took into account all the relevant evidence, the final responsibility for deciding a claimant's RFC rests with the ALJ. *Id.* § 404.1545.

In this case, as discussed previously and as pertinent here, the ALJ found at step two that the Plaintiff had the severe impairment of primary headache disorder. (R. 25). In subsequently formulating his RFC determination at step four, the ALJ reviewed the record evidence relating to this disorder. *Id.* at 26–30. This included the Plaintiff's subjective complaints that he suffered every day from "nonstop" migraine headaches, which would "get so bad" they would require him to lay down. *Id.* at 28, 43, 53–54. It also included treatment notes from the Department of Veterans Affairs (VA) where the Plaintiff received care, which reflected that the Plaintiff had a history of concussions related to his military service and that he reported chronic headaches dating back many years. *Id.* at 28, 690–828, 839–1035.

Based upon all the information before him, however, the ALJ determined that while the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other information in the record. *Id.* at 28. With respect to the Plaintiff's headaches in particular, the ALJ pointed out, *inter alia*, that an August 2018 MRI of

7

the Plaintiff's brain did not show any significant intracranial abnormality; that treatment notes from April 2019 indicated the Plaintiff only experienced headaches two to three times per week, rather than every day; and that the Plaintiff's hearing testimony and other evidence in the record revealed the Plaintiff was able to drive, shop for groceries, manage his funds, communicate with his friends and family, and perform a limited array of household chores. *Id.* at 28–29, 328–30, 357–59, 690–828, 839–1035.

In the end, the ALJ concluded that "due to . . . [the Plaintiff's] primary headache disorder" and certain of his other impairments, he had the capacity to engage in light work subject to a number of exertional, postural, and manipulative restrictions. (R. 30). The ALJ also concluded that the Plaintiff's RFC should contain several additional limitations because of some of his remaining impairments. *Id*.

The Plaintiff now argues that it was incumbent on the ALJ to incorporate restrictions in his RFC to address the Plaintiff's headaches since he deemed those headaches to be a severe impairment. (Doc. 18 at 5–6). To buttress this contention, the Plaintiff highlights certain evidence in the record, including his hearing testimony in which he described the frequency and strength of his headaches. *Id*. at 4. The Plaintiff's challenge does not survive scrutiny.

To begin, the Court does not agree with the underlying premise of the Plaintiff's argument that an ALJ must impose a designated limitation in the RFC to accommodate each and every severe impairment the claimant has. *See* (Doc. 18 at 5–6) (requesting that this case be reversed and remanded "with directions [to the ALJ] to

8

include in [his] decision what limitations resulted from [the Plaintiff's] severe impairment of headache disorder"). This assertion runs counter to decisions issued by the Eleventh Circuit and numerous courts in this District. *See, e.g.*, *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (ruling that the ALJ properly considered the claimant's severe impairment of obesity in formulating the claimant's RFC even though the ALJ found that the claimant's obesity did not result in any "specific functional" restrictions); *Moore*, 405 F.3d at 1213 n.6 (noting that "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine [an] ALJ's determination in that regard"); *Spann v. Comm'r of Soc. Sec.*, 2025 WL 2109209, at *5 (M.D. Fla. July 10, 2025) ("[T]he [c]ourt rejects [the claimant's] argument[ ] that the ALJ was required to include specific limitations . . . caused by . . . [an affliction] into her RFC simply because the ALJ found [that affliction] to be a severe impairment."), *report and recommendation adopted*, 2025 WL 2106656 (M.D. Fla. July 28, 2025) (citations omitted); *Mancini v. Comm'r of Soc. Sec.*, 2021 WL 1087270, at *1 (M.D. Fla. Mar. 22, 2021) ("The [c]ourt . . . does not agree with [the claimant's] hardline position that every 'severe impairment' must be linked to a specific limitation in the RFC."); *Isom v. Saul*, 2020 WL 1099461, at *3 (M.D. Fla. Jan. 30, 2020) (stating that the ALJ's assessment the claimant's narcolepsy was severe did not mean the ALJ was compelled to impose any restrictions relative to that malady); *Conroy v. Saul*, 2019 WL 4727815, at *5 (M.D. Fla. Sept. 27, 2019) ("It is well settled that severe impairments do not necessarily result in specific functional limitations" and, thus, where "there are "no specific functional

limitations from a severe impairment[,] . . . [an] ALJ need not include a corresponding limitation for that impairment in the RFC."); *Sorensen v. Berryhill*, 2018 WL 1225106, at *4 (M.D. Fla. Mar. 9, 2018) ("Diagnoses of impairments do not require [the] imposition of certain specific limitations in an RFC assessment."); *Owens v. Colvin*, 2015 WL 12856780, at *1 (M.D. Fla. Oct. 15, 2015) ("The [c]ourt rejects [the claimant's] argument that because the ALJ found that [the claimant] had the severe impairment of migraine headaches, he had to, as a matter of law, include a limitation in the RFC assessment specifically corresponding to that impairment.").

The lone case that the Plaintiff cites to bolster his argument—*Spilka v. Kijakazi*, 2022 WL 4072434 (M.D. Fla. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 4017088 (M.D. Fla. Sept. 2, 2022)—does not undermine this wealth of authority. In *Spilka*, the claimant asserted, as relevant here, that the ALJ "failed to consider the limiting effects of . . . [the claimant's cervicogenic] headaches[6] on her RFC" even though the ALJ recognized that the "cervicogenic headaches [we]re a severe impairment" based on the claimant's hearing testimony, which the ALJ credited. 2022 WL 4072434, at *2–3. The court found that this assertion had merit because "[t]here [wa]s no indication [in the ALJ's decision] that[,] in assessing the [claimant's] RFC[,] any limitations from cervicogenic headaches were included." *Id*. at *3. The court went on to explain that "once . . . [an ALJ] has found that a [claimant] has a severe

---

[6] A cervicogenic headache is head pain caused by an issue in the neck. *Cervicogenic Headache*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/cervicogenic-headache (last visited August 19, 2025).

impairment—which means [ ]he has a significant limitation—[t]he [ALJ] has a duty to include some functional limitation, or at least explain why a limitation is not included, in the RFC." *Id*.

The court's decision in *Spilka*, which is not binding on this Court, detracts from rather than supports the Plaintiff's claim of error. Unlike in *Spilka*, the ALJ in this case explicitly imposed restrictions "due to . . . [the Plaintiff's] primary headache disorder" and several of his other severe impairments. (R. 30). Notably, the Plaintiff does not articulate why these limitations are inadequate or show how the record evidence warranted greater restrictions. *See Preston v. Comm'r of Soc. Sec.*, 2017 WL 2889776, at *7 (M.D. Fla. Apr. 28, 2017) ("It is . . . [a claimant's] burden to demonstrate that [he] has limitations greater than those incorporated in the RFC."). *Spilka* is accordingly of no help to the Plaintiff here.[7]

---

[7] To the extent *Spilka* can be construed as standing for the broader proposition that an ALJ must correlate a functional limitation for each of a claimant's severe impairments, the Court finds it unpersuasive. Not only would such a reading of *Spilka* be wholly at odds with the myriad opinions referenced above, it also would conflict with one of the decisions—*Mancini*—upon which *Spilka* expressly relies. *See Spilka*, 2022 WL 4072434, at *3 (citing *Mancini v. Comm'r of Soc. Sec.*, 2021 WL 1090826, at *8 (M.D. Fla. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 1087270 (M.D. Fla. Mar. 22, 2021)). As mentioned above, the district court in *Mancini* rejected the claimant's "hardline position that every 'severe impairment' must be linked to a specific limitation in the RFC." *Mancini*, 2021 WL 1087270, at *1. Instead, it found that this approach was only appropriate "where nothing in the record reveal[ed] whether the ALJ considered the effect of the impairment in assessing the RFC." *Id*. This is not the situation here.

The other opinions which *Spilka* court cites—namely, the Eleventh Circuit's unpublished decision in *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896 (11th Cir. 2010) (per curiam) and the district court's decision in *Reis ex rel. Reis v. Astrue*, 2012 WL 3231092 (M.D. Fla. Aug. 6, 2012)—are either distinguishable or similarly unconvincing. In *Raduc*, for example, the claimant maintained that the ALJ erred in determining that her irritable bowel syndrome (IBS) "did not affect her RFC" despite deeming this affliction to be a severe impairment. 380 F. App'x at 898. While the Eleventh Circuit ultimately reversed the Commissioner's decision, it did so on the ground that the "the ALJ did not

The Plaintiff's claim of error is also flawed to the extent it rests on his hearing testimony. (Doc. 18 at 4). As the Plaintiff concedes, the ALJ "acknowledged [in his decision] that the [Plaintiff] indicated [his headaches] occurred nonstop every day and that he testified . . . they would get so bad, he had to lay down." *Id.* at 3. And as discussed above, the ALJ discounted the Plaintiff's subjective complaints regarding his headaches and other symptoms, concluding that such self-reports were "not entirely consistent" with the medical information and other evidence in the record, including the August 2018 MRI of the Plaintiff's brain, the Plaintiff's differing reports about the frequency of his headaches, and the Plaintiff's daily activities. *See* (R. 28); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (denominating daily activities as a factor in evaluating a claimant's symptoms); SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017) (same); *Dyer*, 395 F.3d at 1212 (upholding an ALJ's analysis of the claimant's subjective complaints that was based in part on the claimant's activities of daily living). Significantly, the Plaintiff does not contest the ALJ's assessment of his subjective complaints and has thus waived any such challenge. *See Grant v. Soc. Sec. Admin., Comm'r*, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014)); *Battle v. Comm'r, Soc. Soc. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) (per curiam) (quoting *N.L.R.B. v.*

---

meaningfully conduct the proper legal analysis about the effect of [the claimant's] IBS on her RFC." *Id*. at 899. The Eleventh Circuit found, for instance, that the ALJ had "apparently dismissed" the idea of including any "IBS-related limitations" in the RFC predicated, at least in part, on a "misunderstanding of the nature of this condition," and that it was also "unclear whether and to what extent the ALJ discounted [the claimant's] testimony about her IBS symptoms." *Id*. at 898–99. The Plaintiff does not raise these challenges in this case.

*McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)); *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (per curiam) (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995)); *see also Hatcher v. Berryhill*, 2018 WL 4483491, at *5 (M.D. Fla. Sept. 19, 2018) ("Having appropriately discounted [the claimant's] subjective complaints, the ALJ was only required to account for [the claimant's] impairments to the extent the ALJ found the allegations credible and to the extent they were consistent with the evidence.").

Finally, the Plaintiff's efforts to cobble together other evidence in the record that he believes bolsters his claim of error is misguided. (Doc. 18 at 4). As the Eleventh Circuit has made clear, "[u]nder . . . [the] substantial evidence standard of review, [a claimant] must do more than [simply] point to evidence in the record that supports h[is] position;[ ]he must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). The Plaintiff does not do so here. Regardless, the ALJ evaluated the evidence referenced by the Plaintiff, and it is not now the function of the Court to re-weigh that evidence. *Carter*, 726 F. App'x at 739 (cautioning that a court "may not decide the facts anew . . . or re-weigh the evidence") (citations omitted); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (observing that when the Commissioner's decision is buttressed by substantial evidence, a court must affirm it even if the court would have reached another result and even if it finds that "the evidence preponderates against" the Commissioner's decision) (citing *Moore*, 405 F.3d at 1211).

13

In sum, it evident from the ALJ's decision that he based his RFC determination on the Plaintiff's condition "taken as a whole," *Jamison*, 814 F.2d at 588 (citations omitted), after assessing all the pertinent information before him, 20 C.F.R. §§ 404.1520(e), 404.1545(a), and that this determination is adequately substantiated by the record evidence. The Plaintiff's challenge therefore fails.

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Defendant's favor, to terminate any pending motions, and to close the case.

SO ORDERED in Tampa, Florida, this 28th day of August 2025.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record